IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALISAN FINE ART CO. LTD., | ) |
| | ) Case No. 23- |
| Plaintiff, | ) |
| | ) Judge: |
| vs. | ) |
| | ) |
| THE ENTITIES listed on EXHIBIT 1, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff hereby files this Complaint for, *inter alia*, (1) federal trademark infringement and (2) unfair competition and false designation of origin, and (3) deceptive trade practices under Illinois state law against Defendants based on Plaintiff's own activities and on information and belief as to the activities of others:

**The Parties**

1. Plaintiff Alisan Fine Art Co. Ltd. ("Plaintiff") is a limited company based in Hong Kong. Plaintiff manufactures its own branded products bearing its registered trademarks, sells its branded products online, and licenses the use of its registered trademarks to a small number of trusted partners.

2. Defendants identified on Exhibit 1, a copy of which will be filed with the Court under seal pending the Court's approval, are all believed to be individuals, unincorporated business associations, and business entities who, upon information and belief, reside primarily in foreign jurisdictions but also in the United States. The true names, identities and addresses of many of the Defendants are currently unknown.

3. Many of the Defendants conduct their operations through fully interactive

1

commercial websites hosted independently and/or on various e-commerce sites, such as Amazon, eBay, Wish, Alibaba, Ali Express, and Wal-Mart ("Infringing Websites" or "Infringing Webstores"). Each Defendant targets consumers in the United States, including Chicago, Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiff's trademark rights ("Counterfeit Products"). Defendants have the capacity to be sued in the District pursuant to Federal Rule of Civil Procedure 17(b).

4. Through their operation of the Infringing Webstores, Defendants are directly contributing to, inducing, and engaging in the sale of Counterfeit Products often times as partners, co-conspirators and/or suppliers. Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations.

## JURISDICTION AND VENUE

5. This is an action for trademark counterfeiting, trademark infringement, and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. §1367, over Plaintiff's claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

7. This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in the District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

**BACKGROUND**

9. Plaintiff owns four trademarks registered with the United States Patent and Trademark Office (the "Marks"). Copies of the trademark registrations are attached as Exhibit 2, and will be filed under seal with the Court's approval.

10. Plaintiff manufactures and sells test products through its own online webstores and licenses the use of the Marks to a limited number of manufacturers of beauty and personal care products that are sold online and in retail shops around the world (collectively, the "Products"). The presence of the Marks increases the value of the Products by increasing brand awareness and consumer confidence.

11. Defendants' advertising, marketing, and sale of the Counterfeit Products in violation of Plaintiff's intellectual property rights is causing irreparable damage to the Plaintiff, its Marks, and its brands. In all of the cases that Plaintiff investigated, Defendants have used the Marks in their advertisements implying that the products they are selling are authentic Products sold or authorized for sale by the Plaintiff. The Plaintiff's test purchases, however, revealed that the products that are shipped are replacement products of unknown quality and origin, leading to disappointment and distrust among consumers.

12. Plaintiff is the owner of all rights, title, and interest in and to the Marks. The registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. §1065. The registrations for the Marks constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the Marks pursuant to 15 U.S.C. §1057(b).

13. Plaintiff's brands, symbolized by the Marks, are recognized symbols of high-quality, beauty and personal care products. As detailed below, Plaintiff has been using the Marks for many years in connection with the advertising and sale of products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

14. The Marks have been widely promoted, both in the United States and throughout the world. Consumers, potential consumers, and other members of the public not only associate Products bearing the Marks with exceptional ingredients, style, and prestige, but also recognize Products sold in the United States are approved by Plaintiff.

15. The Marks have never been abandoned by Plaintiff.

16. Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Marks.

17. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

18. Plaintiff identified over 100 websites and webstores using the Marks to promote and sell Counterfeit Products.

19. Defendants' use of the Marks on or in connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

26. Defendants have offered for sale and sold Counterfeit Products using the Marks, and will continue to do so absent legal action.

27. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the Marks in connection with the advertisement, offer for sale and sale of the Counterfeit Products, through, inter alia, the Internet. The Counterfeit Products are not genuine Products. Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

28. Defendants also deceive unknowing consumers by using the Marks without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Products and in consumer product searches within the Webstores.

29. Defendants go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate the Infringing Webstores. Upon information and belief, Defendants regularly create new websites and webstores on various platforms using the identities listed in Exhibit 1, as well as other unknown fictitious names and addresses. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their illegal counterfeiting operations, and to prevent the Infringing Webstores from being disabled.

30. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Counterfeit Goods that infringe upon the Marks unless preliminarily and permanently enjoined.

31. Plaintiff has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## (15 U.S.C. §1114)

32. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

33. The Marks and the goodwill of the brands associated with them in the United States and throughout the world are of great and incalculable value. The Marks are highly distinctive and have become universally associated in the public mind with high-quality Products. Because of the investment in the brands represented by the Marks, Plaintiff is able to charge increased licensing fees to manufacturers and distributors.

34. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Marks and the fact that Defendants' Counterfeit Products are sold using marks which is identical or confusingly similar to the Marks, the Defendants have manufactured, distributed, offered for sale and/or sold theCounterfeit Products to the consuming public in direct competition with Plaintiff's sale of genuine Plaintiff products, in or affecting interstate commerce.

35. Defendants' use of copies or approximations of the Marks in conjunction with Defendants' Counterfeit Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and commissions.

36. The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and

reputation.

## COUNT TWO
### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. §1125(a))

37. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

38. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the products sold and offered for sale using the Plaintiff's Marks and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

39. By misappropriating and using the Marks, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

40. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized, or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

41. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), in that Defendants' use of the Marks in connection with goods in interstate commerce constitutes a false designation of origin and unfair competition.

42. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT THREE
### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510)

43. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

44. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the products sold and offered for sale under the Plaintiff's brands and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

45. By misappropriating and using the Marks, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

46. Defendants' unlawful, unauthorized, and unlicensed offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentationsthat the Counterfeit Products were created, authorized, or approved by the Plaintiff, all to the Defendants' profit and to the Plaintiff's great damage and injury.

47. Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq*., in that Defendants' use of the Marks in connection with their goods in interstate commerce, constitutes a false designation of origin and unfair competition.

48. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and

permanently enjoined and restrained from:

(i) using the Marks or any reproduction, counterfeit, copy or colorable imitation of the Marks in connection with the distribution, advertising, offer forsale and/or sale of merchandise not the genuine products of the Plaintiff; and

(ii) passing off, inducing, or enabling others to sell or pass off any Counterfeit Products as genuine products licensed and endorsed by the Plaintiff; and

(iii) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

(iv) further infringing the Marks and damaging Plaintiff's goodwill and competing unfairly with Plaintiff in any manner;

(v) shipping, delivering, holding for sale, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory authorized by Plaintiff to be sold or offered for sale, and that bear the Marks or any reproductions, counterfeit copies, or colorable imitations thereof;

(vi) using, linking to, transferring, selling, exercising control over, or otherwise owningor operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

(vii) operating and/or hosting websites at the Infringing Webstores and any other domainnames registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Marks or any

reproduction, counterfeit copy, or colorable imitation thereof to be sold in connection with the Marks; and,

(viii) registering any additional domain names that use or incorporate any of the Marks.

2. That Defendants, within ten (10) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court;

3. Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any internet search engines, Webstore hosts or their administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of Counterfeit Products using the Marks;

4. That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Marks be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. §1117;

5. In the alternative, that Plaintiff be awarded statutory damages of Two Million Dollars (U.S.) and No Cents ($2,000,000.00) for each and every use of the Plaintiff's Marks counterfeited by each Defendant;

6. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

7. Grant Plaintiff such other and further legal relief as may be just and proper under the circumstances.

Respectfully submitted,

10

By: /s/ Patrick M. Jones  
Patrick M. Jones, one of the Attorneys for Plaintiff

**AEGIS LAW**

Patrick M. Jones (IL #6271256)
Christopher A. Thornton (IL #6239332)
Theodore Hughes
Willis Tower
233 South Wacker Drive, 44th Floor
Chicago, Illinois 60606
Tel: (312) 329-0010
Email: pjones@aegislaw.com
Email: cthornton@aegislaw.com
Email: thughes@aegislaw.com